May it please the Court. My name is Anne Wallstrom. I'm an attorney for the Federal Defenders of Eastern Washington and Idaho. And I'm here this morning on behalf of Rosendo Delgado Jr. Counsel, could I ask you to focus first on something that's bothering me? You've got a lot of really tricky exhaustion issues in this case. Yes. They're frankly difficult to sort out.  If I assume them all in your favor, everything's exhausted. I'm not clear on exactly what it is in the State Court's decision that is contrary to or an unreasonable application of Supreme Court authority, or exactly what Supreme Court authority it's contrary to or an unreasonable application of. Could you give me your best shot on that? Yes, Your Honor. And I wanted to say I'd like to reserve three minutes for rebuttal. For the first issue, the first issue is whether the trial court admitted Mr. Delgado's confession in violation of Moran. On that, I couldn't see what it was contrary to or an unreasonable. It wasn't contrary to, I don't think. It's just an unreasonable application issue. And it looks like they go back and forth. Every time he says he wants an attorney, they stop. And then eventually he blurts out something despite the police telling him to keep his mouth shut, basically. It looked like, well, you could argue this and that. But unreasonable application, it has to be way out in left field. The unreasonable application stems down from Miranda through Edwards v. Arizona through Minick v. Mississippi. The Court is aware that they did advise him of his Miranda warnings. They go back and forth. The Court did find that his request for an attorney, which was maybe I should talk to an attorney, which he made on two occasions, was a sufficient request for an attorney. And looking then to Minick v. Mississippi, where a defendant has requested an attorney, and in this case he did request an attorney and there was absolutely no attempt to make contact for an attorney. Hold on just a sec. I'm looking at the Washington Court of Appeals decision. And I think we're talking about page 9 on Excerpt 39. Am I right? Am I right about that? I'm sorry. I did not hear the page. 9 of the Washington Court of Appeals decision. Okay. I am there. And it looks to me like they cited Edwards and they cited some Washington cases that applied and followed Edwards and they stated the law right. If he requests counsel, he can't be questioned more until either he's got a lawyer or he reinitiates conversation himself. They're right to that point, right? Yes. Okay. So where are they unreasonable in their application of that principle? It's unreasonable, Your Honor, because Mr. Delgado had requested an attorney and instead of getting him an attorney, Sergeant Merriman returns to the holding cell where Mr. Delgado is located and begins to talk to him about the charges he will face. He says he's going to face first degree murder, the death penalty. The court then found that Mr. Delgado reinitiated the conversation. Yeah. Here it is. And it looks to me like this is what we have to defer to under 2254D. It says here Mr. Delgado's statements consisted entirely of denials until after the second equivocal request for an attorney to Sergeant Merriman. The record supports the court's ruling that Sergeant Merriman responded appropriately to the second request by ceasing all questioning, except to clarify whether Delgado wished to waive the right to counsel. Everything after Delgado initiated further communication was then admissible. It sounds like a pretty straightforward application of the rule, although, of course, one could argue about whether it really reinitiated separately and that sort of thing. There is argument there as far as what happened and what was reinitiated. But looking to Minick v. Mississippi, it discusses Edwards v. Arizona. It talks about how a defendant needs to be protected from police officers returning to a cell, returning to come back and talk again. And so the unreasonable application is through Edwards v. Arizona and Minick v. Mississippi that the request was made, there was no attempt to get Mr. Delgado an attorney, and there was reinitiation of interrogation by coming back in. Sergeant Merriman did not have to return to that holding cell to talk to Mr. Delgado. And so, therefore, there's the unreasonable application of Edwards v. Arizona and Minick v. Mississippi. For this issue, the ---- I'm sorry. The acoustics aren't really great here. Yes. Could you say that once more? Yes. What is the nub of why? The nub is Minick v. Mississippi and Edwards v. Arizona, that Sergeant Merriman's return to the holding cell was a reinitiation of the interrogation in violation of that clear Federal precedent, that Sergeant Merriman did not have to return to inform Mr. Delgado of the possible charges. He could have done that through counsel. So you're saying if a policeman ---- if questioning has stopped, a man requested a lawyer, questioning stopped, everybody did everything right, and then sometime later the cop comes back to the cell but he doesn't say anything, that's a violation of a person's right to counsel? The violation here occurred where they did not seek an attorney for Mr. Delgado, and when he did return, he didn't ---- They don't have to seek an attorney, right? They have to either get him a lawyer or cease questioning. Right. They cease questioning here. But he did return to talk to Mr. Delgado further about these charges, and that was the reinitiation then which prompted Mr. Delgado to begin speaking. Did they return to the cell to discuss these charges? He returned to the cell to tell Mr. Delgado the charge he would be facing and that there was a possible death penalty. Well, wasn't that at the request of Mr. Delgado? What am I charged with? During the previous conversation they had discussed what he could possibly be facing. So, yes, there was that conversation prior to, but, again, Sergeant Merriman came back, reinitiated contact, and then that's when the questioning began. He came back and told him what he was charged with. Yes. He didn't interrogate him. That led, then, to further interrogation. The State has ---- But you're conceding that Merriman came back in response to Delgado's request that Merriman tell him what he was charged with. So Merriman came back and told him what he was charged with, and then Delgado went on with, essentially, I don't shatter not any requested responses. Sergeant Merriman returned because of the previous conversation that ---- The previous conversation had asked him to get some information and pass it on to Delgado. About what he would be facing. Let me ask, what was the basis for the trial court's admission of the statement? The trial court found that there had been no constitutional error and that the questioning had to cease, but between the time where Mr. Delgado originally made a statement until then he began speaking to Sergeant Merriman. And because there was ---- So the trial court essentially said you reinitiated the conversation yourself.  And that was affirmed by the Washington Court of Appeals? Yes, it was, Your Honor. And then the Supreme Court upheld that without ---- Without a decision. Without an opinion. Yes, that's correct. The State has argued that Mr. Delgado failed to exhaust this claim. However, the district court properly found that under Peterson v. Lambert, this claim had been exhausted. The State court cases that Mr. Delgado relied upon discussed Miranda v. Arizona as well as other federal cases. The State recently filed a supplemental letter brief citing to an Alaska case, Galvin, and I believe that was for this first issue in which the petitioner cited only to State cases. And this court found that the claims had not been exhausted. However, Galvin is distinguishable because in Galvin it involved an ineffective assistance of counsel claim and Alaska ---- in Alaska there is a different standard for an ineffective assistance of counsel. And so the State cases did not rely upon federal cases as the State cases here did. And so therefore, under Peterson v. Lambert, this claim has been exhausted. Mr. Delgado also has raised three other issues. Before you leave that one, I'm still trying to understand your position. Is it your position that Miranda is violated? When a defendant says, I don't want to talk, I want a lawyer, but then says to the officer, what am I going to be charged with? And the officer responds, that's a violation of Miranda. Is that right? Not in every ---- And then the defendant volunteers inculpatory information. I would not say in every case, Your Honor. In this case what happened, though, is that the officer returned and then interrogation ---- Now what was the interrogation by the officer after he told him what he was charged with? After he told him what he was charged with, Mr. Delgado made a statement and then ---- And the officer told him, wait a minute, you've exercised your right. Yes, exactly. And then the interrogation followed from there. What was the question that you say was an interrogation? The questions were, Sergeant Merriman talked to him, I believe, about witnesses that may have identified Mr. Delgado, talked to him about circumstances surrounding it, and there was a give and take between Sergeant Merriman and Mr. Delgado about what had happened. And clearly it was an interrogation. It was all about ---- and led to Sergeant Merriman taking notes, and that was the confession that was admitted at trial through a sergeant. I'm having trouble following that. What I'm taking is the facts, what this Court of Appeals decision says. Yes. Delgado started to question Merriman about the likely ---- Delgado slumped down and said, I think maybe I better talk to an attorney. Sergeant Merriman immediately said, we are done, just what he's supposed to say. Delgado then started to question Merriman. This isn't the cop questioning the suspect. This is the suspect questioning the cop about the likely charges against himself and Julio. Sergeant Merriman left the room briefly, returning the information that both Delgado and Julio would be charged with first-degree murder. So that's not the cop questioning the suspect and the suspect answering the questions. That's the suspect questioning the cop and the cop getting the information and answering the question. So far, I can't see how there's anything wrong. And then the very next words, Mr. Delgado then said, with no question. He's not responding to a question. I was there. And then Merriman says, whoa, wait a minute, you told me you wanted to talk to an attorney. Again, basically pulling out. And then Delgado left and said he was my friend. And for me to say that that is an unreasonable, not just an erroneous application, I don't understand what I'm missing that would make that just too far a stretch. Isn't that the ‑‑ are those the facts I'm supposed to take? Those are the facts that the district court found. And one other issue that we raised. I mean the state court. Excuse me, the state court found and that the district court followed. One other issue that we raised in this appeal. There's no deference to the district court, but there's a lot of deference to the state court. Without a doubt, there's a lot of deference to the state court. However, one issue that we did raise is that the district court made its rulings in this case without reviewing Mr. Delgado's testimony about his confession at trial. And the district court does have an obligation to review an entire trial transcript. And without a doubt, there is a lot of deference. I don't care what the district court did because it's de novo review. All I care about is the state court. Looking then to Mr. Delgado's, the state court followed the officer's version of the events. But Mr. Delgado also testified at trial about what happened. But the state court was free to say Delgado's lying, the cop's telling the truth, right? Yes. And they followed the officer's testimony in this case. Again, the heart of what we're arguing is that under Minnick v. Mississippi, an officer cannot return. And essentially under Edwards v. Arizona, a person is to be protected from police coming back in. And even though Mr. Delgado asked a question, does not lead then to a police officer being able to ask further questions. Okay. I think we understand your position. Are there any of the other issues in the case that you'd like to address? Yes, Your Honor. The second issue concerns the admission and the trial court's denial of the testimony from an expert witness who would talk about eyewitness testimony. Again, the state argued that this issue had not been exhausted through the state court of appeals and the Washington Supreme Court. The district court found that under Peterson v. Lambert that it had been exhausted. And again, I believe the state was also citing to the Galvin case out of Alaska, saying that it had not been exhausted. But for the reasons stated earlier, that is also distinguishable. A defendant does have a due process right to a fair trial to present evidence and to call witnesses. And looking to the Ninth Circuit's, to this court's test that is set forth for whether or not experts should be allowed to testify, again, it was a due process. Mr. Delgado claims that this is a due process violation, that this expert was not allowed to testify. The eyewitness would have talked about, his testimony would have been probative. He would have been able to explain things to the jury that they would not understand about eyewitness identification. Second, the testimony would be reliable. He was a professor at the University of Washington who has testified numerous times. Third, the jury would have been capable of evaluating this expert's testimony. Fourth, it was not cumulative. And finally, the testimony would have been a major part of Mr. Delgado's defense. His defense was someone else who looked very similar to him was the shooter in this case. These eyewitnesses, Loftus is a well-known, highly regarded expert. And as I understand it, it's about eyewitnesses generally that he testifies. And in this case, the eyewitnesses weren't just like you or me. We go out to lunch today and we see a mugging. They were people that knew Delgado. Is that right? That's correct. Dr. Loftus at the pretrial hearing testified, though, that he could explain to the jury how when people have certain expectations about someone that they know, how that could also affect eyewitness testimony. So he would be able to apply his research to the facts of this case. I have trouble seeing why testimony about eyewitnesses generally, the acts done by strangers, has a whole lot to do with a case where it's mostly about whether the policeman's lying about the confession and where the eyewitnesses knew the person. My time is up, if I may respond. Amazing. It isn't up yet. It's just the warning track. Oh, that's right. In this case, Your Honor, the confession was at the heart of the case without a doubt. But a defense that Mr. Delgado also presented was that someone else who looked similar to him committed this offense. Dr. Loftus was shown a photograph of the person who looked similar to him and was able to comment on this person that under the circumstances, these individuals who knew Mr. Delgado may have a difficult time distinguishing him from someone else. And so while the confession was primary in this case, the defense was also that someone who looked like Mr. Delgado committed this offense. I'd like to reserve the rest of my time. Thank you. May it please the Court. I'm John Sampson, Assistant Attorney General, representing the Respondent Appellee. The district court correctly denied the habeas petition in this case, and this court can affirm on two bases. First, the claim Mr. Delgado failed to properly exhaust the state remedies and his claims are now procedurally barred. And second, the state court adjudication of all four claims was a reasonable application of clearly established federal law. I would like to briefly address the merits of the Miranda issue, and then I will move on to the exhaustion issue unless the Court has other questions. The state Washington Court of Appeals adjudication of the Miranda issue was a reasonable application of federal law. The findings of fact are not disputed. They weren't disputed in the state court, and the state court said because those findings of fact were not challenged, they were treated as verities on appeal. And they're not really challenged here in federal court. The petitioner argues that the district court failed to consider his testimony regarding what happened, but he did not testify in the pretrial hearing on the admissibility of the statements. He only testified at trial, giving his version of the events to the jury. When the trial court decided to omit this evidence and to exclude portions of the confession, the only testimony before the court was the testimony of the officers. And the testimony of the officers, particularly Detective Merriman, was that when Mr. Delgado said, I think I may want an attorney, he said, we're done. He then started to gather up his materials in order to leave the room. Mr. Delgado asked him some questions regarding the charges and possible penalties. He said, I'll get those answers for you. He leaves. He then comes back a short time later, answers those questions, at which point Mr. Delgado admits that he was there. Detective Merriman attempts to clarify whether or not he does want counsel, which is appropriate under Edwards and under Minnick. And Mr. Delgado then proceeds to give his inculpatory confession. This was a reasonable application of Federal law. And for that reason, relief is denied even if the claim is denied. And the State trial court did exclude the statements that occurred between that first statement to Detective Tovar and to the time when he said, basically, I was there. But her argument is that after that occurred, since the law enforcement officers knew that he wanted to talk to an attorney, that they should not have talked to him any further because he asked for an attorney. The cases say you cannot interrogate the defendant. Well, Sergeant Merriman went in there to interrogate him. He did. He did. And for that reason, the trial court excluded that portion of the statements. And during that entire time, all Mr. Delgado said was, I wasn't involved. I wasn't involved. And the court still excluded that evidence from trial. There is no case law, however, that says you can't talk to a defendant at all. It says you cannot engage in custodial interrogation. And there is no case law that says you cannot answer the questions of a defendant. And once a defendant started to ask questions of Detective Merriman about the charges and the penalties, there is no United States Supreme Court case law that said Detective Merriman cannot answer those questions. So he came back, he answered those questions, and then Mr. Delgado initiated the conversation further. So I take it your response to my questions is that there is no U.S. Supreme Court case. It says my defendant clearly states I want to talk to a lawyer, I don't want to talk to you. Is it okay to come back and try to initiate a conversation? You cannot come back and engage in custodial interrogation. Why did Sergeant Merriman come back? He did come back to engage in that. And so that part was erroneous, and the court ruled that that part was inadmissible. But why shouldn't everything that occurred since it was erroneous be excluded? Because there is the exception to the rule. And the exception is when the defendant then initiates the conversation. There was a break in time. Detective Merriman left, came back, answered the questions that the defendant himself had asked. And then the defendant initiated the question. So he came back twice? He came in. He was not there in the first instance with Detective Tovar. He came in after the first statement, I think I might want to talk to an attorney. And then he left to find out the answers to Mr. Degato's questions. And this is not a case where Mr. Degato said, I want an attorney, I don't want to talk to you. It was more equivocal than that. It was, maybe I should talk to an attorney, which the Supreme Court says a detective can ask clarifying questions. And so when Detective Merriman said, whoa, wait a minute, I thought you wanted an attorney. Do you want an attorney? That was proper under Supreme Court precedent. And the State adjudication, therefore, even if this Court were to conclude it was erroneous, is still objectively reasonable, and for that reason, relief should be denied. Help me on something relating to exhaustion. Your exhaustion issues are really complex. Our Court has found exhaustion complex. We went on bonk on a somewhat similar exhaustion issue not too long ago. What I want to know is, if we decide you're solid on the merits on the issues where we're not deciding that there was exhaustion and get to the merits, if we wind up deciding them in your favor, I know we can't do that if we decide them in the defendant's favor, but if we decide them in your favor, can we skip the exhaustion and get to the merits, or are we obligated to do exhaustion first? Your Honor, you can skip the exhaustion, 28 U.S.C. 2254B. Can or cannot? You can. You can skip the exhaustion. 2254B, subsection 2, says that despite a failure to properly exhaust, the claim may be denied on the merits. And so the Court can affirm the district court on the merits of the claims without reaching the exhaustion issue. To briefly address the exhaustion issue, the – and I'll take the easiest claims first. Claim 3, the petitioner agrees, was presented solely as a state law claim. That was the claim regarding the autopsy photographs and the 911 tape. Claims 2, the Dr. Loftus testimony, and claim 4, the prosecutorial misconduct issue, were presented solely as state law claims. They were citations to state – in the State Supreme Court, they were citations to state law cases only. And the Dr. Loftus testimony, those cases dealt only with evidence rule 702, did not deal at all with the Federal law. There was citation to other circuit cases, which also applied the Federal evidence rule, but, again, that's a Federal evidence rule and not a constitutional rule that's binding on the State courts. So, therefore, there was no Federal claim presented to the State courts regarding claim 2. And claim 4 – I think this came up in Galvin after the en banc. I think I wrote that – I know I wrote it, but I can't remember. Was it published? Yes, it was, Your Honor. And I recently discovered that case, and I did a supplemental citation of authority. And – I think there, the interpretation of the en banc was that there is no iron rule about citation. You just read the document and see if a judge would understand he's supposed to make a Federal law decision. Exactly, Your Honor. And this Court recently held in Fields v. – it's the Fields case. I believe it's Waddington or maybe Washington. And it's cited in the briefs that the citation to Washington State cases is not sufficient to exhaust a claim when those cited cases themselves were decided both on State and Federal grounds. And what the Supreme Court said in the Baldwin v. Reese case is that you do not satisfy fair presentation when you require a State Supreme Court justice to go beyond the body of the brief to discover whether or not a Federal claim is being raised. And I submit that by citing to a State law case and only citing to a State law case and saying the court of appeals decision is in conflict with the Washington Supreme Court's decision, that that requires a State Supreme Court justice to go beyond the body of the petition. They have to go pull the case off the shelf, open it up, read the case, determine whether the case relies on both State and Federal or just Federal or State grounds, and then decide what the petitioner is trying to raise. And under Baldwin and under Fields and under the Galvin case, that is not fair presentation. The ---- Can I ask you about the pending motion to enlarge the record? Yes, Your Honor. You have no objection to enlarging the record before us to include the items that were in the original trial record? That is correct, Your Honor. But you do object to the additional document? That's correct. The newly created affidavit of the investigator and then the letter written by Mr. Vega, those were not fairly presented to either the State courts or the district court. They're not part of the record. And the statement by Mr. Vega is not sworn, and therefore, it should not be considered as municipal testimony. I would ask that the Court affirm ---- unless the Court has further questions, I would ask that the Court affirm the district court's judgment. Thank you. There appear to be no further questions. Thank you, counsel. Your Honor, if I could address our motion to enlarge the record. We are asking the Court to enlarge the record by including four transcripts that were from the trial, as well as a letter written by Mr. Vega and a declaration by an investigator in this case. The items that are presented are ----  No, they were not. Presented to the district court. Is that right? That's correct, Your Honor. Mr. ---- Why would we do that? Under the equitable powers that the Court has under habeas proceeding. Mr. Delgado was not represented by counsel. It seems like the absolute most that we could do, and this would be a stretch, is remand to the district court so that the district court could decide whether they had been previously unavailable and there was adequate diligence and that sort of thing. Your Honor, we have submitted that the district court should have held an evidentiary hearing, and an evidentiary hearing would be proper so that these items could be considered. Whether it should have held them would depend in part on whether these were submitted. If you had submitted these two things to the district court, then the judge might have said, well, I want to hear Vega. Let's have an evidentiary hearing. But since you didn't submit them to the district court, there's no reason for the judge to say, I want to hear from Vega. Mr. Delgado did not have an attorney when he appeared before the district court, did not have an investigator or any means to try to find him. Could you just explain to me what is so compelling about these statements that would change the result? Mr. Vega's statement undermines the testimony by Mr. Davila, who was an eyewitness in this case. He was the man who was shot in the back. Mr. Davila testified that on the night that he was shot, he stated he saw a figure behind him, and then at trial he stated that he clearly saw Mr. Delgado shoot him. This statement, the letter by Mr. Vega, although it's not a sworn statement, it was a letter written to a Federal judge. I'm sure Mr. Vega does not know that this letter is even being used for this purpose, undermines the credibility of Mr. Davila. Is this really an ineffective assistance of counsel claim? I do think it ties into that, Your Honor. And I am out of time. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Alarcon, Kleinfeld